Multimedia Games Mr. Berg Thank you, Your Honor. May it please the Court. The standards in principle are well known and the record is not complex. I hope to have the opportunity to speak to a few points of emphasis briefly. The first involves the significance of the admission in page 18 of the red brief that Gamco's standing to bring this action is not predicated on having an exclusive license in any definable territory. That should be failed. The concept, a part of the United States, which is now in Section 261, goes back at least to 1836. So you concede that geographic territorial limitations to an otherwise exclusive license, that that's the only limitation, would be okay and that person would still have standing to bring suit, correct? I do not concede that any geographical limitation is sufficient. The Court has been clear that minuscule geographic territories won't make it. I am saying that... No, the Court hasn't actually held that. That wasn't an issue in that case. There were no territorial limitations at issue in Primatech, were there?  Okay, but the very statute you cited suggests that there can be territorial limitations for assignment purposes and that would still convey an assignment. Section 261 says that. Yes, it says that, a part of the United States. Okay. Here's the one thing that really concerned me, though, is everyone seemed to concede, at least the District Court said it and I didn't really see clear argument from you all, that a field of use license would similarly convey standing. And that's the part that really baffled me because we have no precedent that says that and, in fact, I think there's some Supreme Court cases that say the contrary. So I'm just... Are you appealing on that basis? Are you focusing on just the exclusive enterprise concept or are you going to argue to me, too, that field of use ought similarly to bar them? Let me start with, as I understand Gameco's position, it has never been justified on a field of use basis and on the record it couldn't be because the New York lottery is such a limited part of the field of use of gaming and even such a limited part of the field of use of lottery gaming that that principle just couldn't apply. What principle? Field of use? Field of use absolutely could not be used to justify standing in this case. Okay, but I don't think... The one thing I don't think you understood was what I was saying more generally, which is the District Court suggested that patent licensees with a field of use license could have standing. Do you agree with that concept? I do not agree with that concept. It's not a question of whether your case involves a field of use. Yes, I understand that and I intended to get there. I simply wanted to clarify... Let me put a hypothetical to you, which I think illustrates what's going on in this case. Suppose I am a new technique for automobile brakes, one which all the automobile manufacturers will want. Why shouldn't I be allowed to say to one person, I will give you an exclusive license with respect to this new product in dealing with a Ford Motor Company, but I'm going to retain for myself the right to deal with General Motors and Chrysler and other things like that. What's the matter with such an arrangement? There is nothing the matter with that arrangement. The question is whether your licensee at that point would have standing to sue in its own name. Why shouldn't the licensee assume, let us assume that it's an exclusive license and that the licensee has the exclusive right to sue for infringement. Why shouldn't the licensee in that situation be allowed to sue for infringement in dealing with Ford? If I may, I'd like to start the answer to that question with precedent of this court. President of this court, do we have any precedent that says the only two situations in which someone who has less than a complete exclusive license may sue for infringement in its own name is if one, there's a geographic limitation or two, there's a field of use limitation. The cases have recognized the right in that situation. Have they ever said, that's all? I don't think we've ever said, put it to those two. Have we? Maybe we have. I would say that the entire line of jurisprudence is to that point. But until this case, no plaintiff has ever attempted to author the kind of theory that the district court authored here that there is a third way. So that all of the precedent is confined. In my view, all of this court's precedent is confined to geographic territories. And the issues in the cases are whether certain factors in a license for a geographic territory are sufficient. What we're talking about here really is to what extent may you give someone the right to sue for infringement by carving out a part of your basic patent right, your basic right to exclude competitors, if you said, well, I'm not going to give you the same rights that I have. I'm going to give you a part of those rights. And the question is, what part is enough to attack someone to sue? Correct, Your Honor. And I want to go back to the precedential answer that I proposed to give you. And it was actually what was going to be my second point spontaneously to raise with the court. And that is the textile production case, which actually involves the Ford Motor Company. It involves a line of sheathing for wires in a car that was invented by Meade, licensed to textile. Textile undertook a requirements contract to fulfill Meade's needs in supplying Ford. And the question was whether textile was an exclusive licensee that had the right to sue in its own name. And textile based that on its exclusive dealings with Meade under the requirements contract. And this court's opinion repeatedly says that does not make any difference, because Meade retained the right to license the patent for use, for sale, for anything else, for any requirements other than its own in dealing with Ford. And therefore, textile was not an exclusive licensee and had no standing. So the fact is, while we look at this as a case of first impression in the sense that the district court used a new theory, textile productions, as I view it, is absolutely on point in the facts, because that was an enterprise license. And the court said that isn't enough, and precisely for the reasons we have argued here, that within both any territory or any field of use, if field of use is a reason to allow standing, Meade could have licensed that product to anybody else to do anything except supply Meade. Mr. Berg, why don't we view this as a territorial assignment? Well, first, it's New York. It's not New York. It's a part of New York. It's not even really a part of New York. It's wherever the New York lottery contracts with, right now, eight racetracks to put many of its play tracks. But wherever that territory is defined by where the New York lottery operates, why isn't that our territorial restriction? And that's the case right there. First, I would start with Gameco's concession on page 18 of the red brief, that it is not attempting to justify its standing, not predicated on its having an exclusive license in a definable geographic region. Well, they're just saying they have other arguments. They're not conceding that this isn't a territorial restriction. That's it. I'm not sure. I wouldn't say that. I don't read that as giving away the case. What's essential in response to your Honor's question, in their language, and it would be mine too, is a definable geographic region. The New York lottery is not a definable geographic region. It's not New York. There is other gaming, Indian gaming in New York. But it's limited to New York, isn't it?  at tracks in New Jersey or Pennsylvania, does it? Actually, right now it doesn't. But the New York lottery authorizing statute allows it to contract with other states for that purpose. But this license is certainly limited to New York. It says authorized by the New York state lottery in the state of New York. So this license doesn't give these folks the right to do it, even if the New York lottery contracts and has terminals in New Jersey. Which would make my point, because if the New York lottery decided to contract with New Jersey, this license wouldn't be an exclusive dealing license, even with the New York lottery. But this license wouldn't authorize them to do anything in the state of New Jersey, would it? No, but if your Honor takes it. As long as we can ascertain the territory, why is this so? Why does that make a difference? We can, in some way, ascertain the territorial limitations of the license. Why isn't that enough to confer standing? And what I'm saying, Your Honor, is you cannot ascertain the territorial limits of the license. The license is any place the New York lottery may or may not choose to do business. The New York lottery. Well, why are they buying it? What do they do? That's where it operates. What's the problem? Well, why are they buying it? Isn't the problem that other people in New York. See, for me, the territorial limitation is clear. And I don't think that's problematic. Because the idea behind the prudential standing concerns is one person ought to be able to be sued for the sole act of infringement. So you don't want multiple people being able to bring suits. So if somebody is infringing this by the New York state lottery in New York, those acts of infringement would be one that this person could bring suit under this licensee. And if someone is infringing by selling New York lottery tickets outside of the state of New York, that's a separate act of infringement where the patentee could bring suit, presumably, if he still has those rights to bring suit and hasn't given those to someone else. So that's why we have territorial limitations. Correct. So this is limited to New York. The problem that I see, though, or one that I think that you're bringing up, is that this is a field of use and a territory combined, which is really where we're in new territory, though pun intended. And the field of use part is the New York state lottery. And here's my concern. These kiosk patent claims, and I call them kiosks because that's the way I look at what they're really doing, well, that kiosk could do a lot more than just the New York lottery, and it would still infringe. Multimedia doesn't. But it could, right? You're absolutely correct. This system, so for one system which would constitute a single act of infringement, both the patentee and the licensee would be able to sue you. That's absolutely correct. And that's the problem that I see here. Is that right? Is that the way you see it too? You correctly see a problem. My view includes multiple problems. And I'd like to go back, Judge Moore, to your earlier question about field of use. I think the Sycom case, which is cited in the briefs, is really rather interesting because that's the case that involves a license from Canada, and it involves what's called commercial use of a product. And the court said there is no standing to sue because there can be governmental use and philanthropic use. I think the fact that Sycom did not even discuss field of use speaks volumes. And I would not support the field of use. Do you want to say a few final comments? Yes. Thank you, Judge Rader. I will. Thank you. Mr. O. Good morning. Thank you. May it please the court. With me at council table is Mr. John Adams, general counsel for International Dean Co. And I'd like to thank the court for granting this interlocutory appeal. I know that this court has limited resources, and it's not an only gift to this court, even after full travel and merits, on behalf of International Dean Co. Thank you. I believe we have to start with the contract documents.  precedent says you start with the contract, the intent of the parties, and the substance of the transaction. And in this case, it's clear it's a territorial restraint with, arguably, a field of use restriction. I do believe that it's the field of use going to lead to some confusion as to who can sue where. I don't think so, Your Honor. And I think that gets back to this court or the lower court. As we were just discussing, the lottery can sell in various places and in various ways that might raise questions as to who is entitled to sue. In this case, more than any, Your Honor, I would say that it's going to be very clear what the scope of this license is because the New York legislature, through the New York lottery, is going to define it. It's not a question of the scope of the license. The patent claims are not to the New York lottery. They're much broader than that. And so the patent claims would cover a system that has one of the options. In fact, your Defendant Claim 14 is a lottery as one of the systems that can be run on these machines. Correct? Correct, Your Honor. So if the lottery is one of the systems, I could envision they could also do Keno or other things. And then you would be in here telling me that someone who does those things infringes. Only if it's in a lottery context. Otherwise, we don't have an assignment. Beautiful. Exactly my point. So you wouldn't be able to come in here and tell me to infringe. So suppose that there's a kiosk that's capable of offering both New York lottery tickets and Keno tickets. So for a single act of infringement, i.e. one system, you would come in here and you would sue that person for doing it with the lottery tickets. And the patentee would have to bring a separate suit for all the other acts of infringement constituted in that system. I would argue, Your Honor, the record does not support that there is that potential. We're talking about dependent claims that specify how the system could be used for particular and different kinds of game making. But since gambling is illegal except in very restricted applications, and our license, our assignment, I should say, applies only to a very narrow application. And if they practice that application, they infringe. We're the only ones that can sue it. If they practice multiple applications, yeah, they may have exposure only to us for that one narrow application, this lottery application. But that would be no different. And by the way, Your Honor, I do think the field of use is. But that's the point. They would have potential liability to both you and the original patent holder for the same act of infringement. They would be potentially subject to multiple suits. And that's what our prudential standing requirements say is one of the important considerations. I agree with you. You've got constitutional standing. You've got legal injury effect. But you've got to have both, constitutional and prudential standing to get standing. And the prudential one is the one that causes you the problem there. I would refer you to the textile products case, Your Honor, on page which says, a licensee is an exclusive licensee only if the patentee has promised expressly or impliedly that others shall be excluded from practicing the invention, quote, within the field covered by the license. That's this court's precedent. And it cites to Wright-Height. And I'll be honest with you. I did not. I read Wright-Height. At some point, I didn't read it because it wasn't cited in any of the briefs. But field of use is a authorized scope of license that provides standing. And in your case, Your Honor, I would think that you're either going to be in a lottery application, in which case, we're the owner. We're the assignee in the lottery. Or you're going to be in charitable. Or you're going to be in gaming. And I would argue, Your Honor, that I can't conceive of a situation where you can be sued by multiple. What is the field of use under this then? Game systems? I would say it's game systems authorized by the New York Lottery. Lottery games authorized by the New York State Lottery. Is that even narrow? Well, and that can expand, too. I mean, the New York legislature can expand that. And this court, construing the intent of the parties, would say that it would cover anything. If the New York Lottery became authorized to put these things in riverboats, in bars, restaurants, the scope of our license, then it would be incumbent upon a trial court or this court to construe the intent of the parties and the substance of the transaction. But it is a substantial amount of commerce. I mean, in the record, page 313, they're putting in 11,000 of these machines. And if you look at the Waterman case, the United States Supreme Court case, that I think all of the cases in this court have been faithful to, they talked about, for instance, a grant of an exclusive right to make, use, and vend two patented machines within a certain district is an assignment. Under that standard, under the Waterman standard, the United States Supreme Court makes it very clear the scope of this license exceeds that by volumes, 11,000 video machines, just in the New York proposal that is before the court. And I would argue that can only expand. Is this license limited to dealing at eight racetracks? No. Well, it is today because the legislature deems that to be. If the legislature changes that, the scope of this license expands by virtue of the intent of the parties. But I thought the moment is limited to eight racetracks in the state of New York. Yes, 11,000 machines in eight racetracks. And I would argue that it's a geographical scope, New York, with the limitation that would be placed upon the New York lottery. Which is field of use. Which introduces the field of use. You know, you cited it and it baffled me. There's a case out of the Supreme Court. Pope Manufacturing versus Gore Mulley. Which is directly on point to field of use. And in which they say, the legal right and the monopoly remains in the patentee. And he alone can maintain an action against a third party. Now the case is slightly different from the facts here. And I'll tell you how it's different, since nobody cited it. Is that it talks about not being able to break up a patent claim by claim. Rather than purely field of use. But the idea is the same. The idea is because when you break it up claim by claim, you could have a single act of infringement that would suggest people to suit by more than one person. Wait a second. At 310, the Fifth Circuit and the Circuit in New Jersey went on to interpret Pope as applying exactly to field of use licenses. No one cited those here either. They're not biting on us. Well, the Supreme Court of course is. But the Fifth Circuit in New Jersey ones aren't. But they're directly on point. I just am baffled why they're not being cited to us. If you construe that in conjunction with Waterman, to me it seems to suggest, and I haven't read the case, so I'm shooting from the hip here. But I think Waterman sets the backdrop. And then this court has always remained faithful to Waterman in basically saying the patent is a bundle of rights to exclude. And you can take one of those exclusion rights. Well, Waterman, I agree with you. And I don't think Pope overrules Waterman or Waterman overrules Pope. Waterman creates the category of allowing limited geography. And on that point, you've got no problem with me understanding. It's the field of use part. It's limited to two machines. No, no, limited to the patented machines, which is what the entire scope of the claim covered. The claim wasn't any broader in Waterman than what the people got in the license. There was no additional breadth. Look at the claims. I understand you're arguing that. It wasn't a field of use restriction in Waterman. They got everything. They got all uses, the entire scope of the patent claim, and limited territory. What about this court's decision then in textile that specifically recognizes a field of use? Here's the thing. Why in the world didn't you just join the patentee? You've got no problems then. There's no prudential standing problems if you join the patentee. You can involuntarily join them. They don't have to even agree. We certainly can do that in this court. Obviously, through the agreement, we can require that. But to be honest, I think we're the lawful assignee in this limited geography with the field of use restriction, and we don't need to. And any parties, especially. Would this case be any different if the license agreement didn't have the limitation limiting it to the New York State lottery? It had no reference to the lottery in it, but it did include the use and the geographical area. Your Honor, I think the answer to that is because the parties are in this industry and they knew about the restriction, they drafted a contract that accepted as a fact the fact that the New York lottery limited where these can be sold. So I think if you construe the contract, it basically said the whole state, it was actually that territorial grant, New York, but everybody that was a part of the contract knew that there was this restriction, and so they incorporated it in the contract. That's why I really think this should be viewed as a geographic license, and the only thing that makes it a field of use restriction is the legality, because you can only use these in certain applications. So it is a geographic field of use. It's both of them together. There are certainly other ways to practice this patent in the state of New York beyond just lottery machines. I cannot argue with Your Honor in that it doesn't just say the state of New York. It has some further limitation. Is the patent claim limited to lotteries? The patent claims are not limited to lotteries. Our assignment is. You keep saying textile versus me to us. Written by one of my esteemed colleagues who asked me to sit next to me. I'm sure he's really familiar with it, but let me just throw this out there so that I can make sure I'm familiar with it. In that particular case, as I understood it, our court held that, in fact, textile products with its field of use license would not, in fact, have standing to sue in their own name, except in this one weird little circumstance, because me, the person they were suing, happens to be the patentee. So there's no way to join as a plaintiff the person you're actually suing. So they gave the narrow exception in that case for that circumstance. And the reason it found no standing is it was not an exclusive license. It raised the concerns you do, Your Honor. But in this case, in this application, there is no doubt we're the only owners. We are the assignee in a lottery application in the state of New York. And so the concern about multiple litigation that you're really concerned with, Your Honor, I just don't think is a legitimate concern under the facts of this case. When you can sue the patent claims... Why? I mean, these products could be used to sell other things. They don't have to right now, but they could. They could expand the use of those machines to sell Kino or something else that would go beyond your assignment. And then the patentee would be able to sue them, and you'd be able to sue them for the same acts of infringement. We would only be able to sue them if they're using a lottery, and the other patentee would not. And they would only be able to sue them in a non-lottery application, and we would not. So there's no threat of multiple litigation, no threat of double damages. The claim is covering both. So there's a claim that covers both. And so one user... And then you should claim your machine claims. It's not the application claims. It's the machine that does these things. So you would sue them for the machine claims, and the patentee would sue them for the machine claims. But doesn't our assignment limit us as to what we can recover for? And see, again, the bundle of rights ours is one of those rights. They can't be sued by anybody else in a lottery application, period. But they'd still be subject to the threat of multiple suits, which Prudential standing says we ought to avoid. Is it a threat of multiple suits, or is it a threat of multiple damages? Because there's no multiple damages, because if they're not practicing the lottery, we're the only ones that can sue. If they're practicing charitable, if they're using this application in a charitable gaming application, we can't sue them, or we can't recover. So I really think when you look at the record as applied to the law, the concern you are expressing is not applicable given the scope of the license. Any other questions for me? Thank you, Mr. President. Thank you so much. Mr. Berger, you have two minutes left. Thank you, Your Honor. First, though, I hate to correct any judge, and I do want to say it. What did I do wrong? Textile Productions held that the licensee did not have standing even to sue the patent owner. So the holding is no standing at all. Second, a bit about the behavior here. Our view has always been that there is no prospect of a credible argument for a field of use here. And our position has always been there is a lack of constitutional standing. Counsel read the critical language from Waterman which turns part of the United States into the word district. Our position is and remains that district means it can be state lines, it can be meets and bounds, there must be an ascertainable physical territory which does not a movable field here. But what's unequivocal about this? It's in the state of New York, period. Because the lottery can do business outside the state of New York. And we are still subject to my protections. But my protections cover if they're doing business outside the state, does it? No, but if the New York lottery does business in New Jersey, and my client is alleged to have infringed by competing in New Jersey, the owner of the patent, IGT, can sue my client for New Jersey competition, while Gameco can sue my client for New York competition, both dealing with the New York lottery. I'm sorry, please finish. But based on different conduct. No, same conduct. Same allegedly infringing technology. Except that one of them is doing business, and one of them, the infringing conduct is in New Jersey, and the other one is in New York. Which teaches why this is not a legitimate geographic limitation. I don't want to bog down in that. I sense that the court does not want to go that direction. But I want to make absolutely certain. Don't draw any inferences from the question. I do not concede the territorial point. May I close very briefly on one other item? Certainly. Another reason for the structure of this case, and it goes to remedy. Our viewpoint is that this license, as initially granted, was a naked hunting license. That that is critical to what the court's disposition should be. We have a mid-litigation amendment, which changed nothing on the ground. It did not allow this licensee to do anything else that it could not have done under the original asset purchase agreement. It simply took some language of this court's case law and tried to cure a standing problem. And under those circumstances, I think the court should look at the economic reality on the undisputed record. And the remedy should be there's no constitutional standing, or even if it's prudential standing, the matter should be reversed with directions to dismiss. Thank you, Your Honor.